**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**THADDIOUS L. KEE**                                                                               **PLAINTIFF**

**VS.**                                       **NO. 5:04CV00084 JMM**

**PETE GEREN, SECRETARY**
**DEPARTMENT OF THE ARMY**                                                         **DEFENDANT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case was tried to the Court on June 18 - 20, 2007. From a review of the evidence, which included exhibits, testimony at trial and by deposition, the Court makes the following findings of fact and conclusions of law:

Findings of Fact

1. Plaintiff, Thaddious L. Kee (Ms. Kee), graduated from Prairie View A and M College with a BS Degree in Business Education and from East Texas State University with a MS Degree in Business Administration.

2. Ms. Kee became a federal employee in 1983 by the Department of the Army as a GS-3 typing clerk at the Red River Army Depot in Texarkana, Texas. In 1984, she became an Army Material Command Intern at the Red River Army Depot, and in 1987 she completed her Army Material Command Intern training. In October, 1986, she was a GS-1102-9 contract specialist at the Red River Army Depot and received extensive formal and on-the-job training experience as a contract specialist.

3. In October, 1986, Ms. Kee became an employee of the Pine Bluff Arsenal (PBA)

as a GS-1102-9 contract specialist assigned to its Directorate of Contracting.  In September, 1987, she became a GS-1102-11 contract specialist, and from that date to the present, she has functioned as a GS-1102-11 contract specialist.

4. From September 1987 to July 1, 2001, Ms. Kee has always been evaluated in the performance of her job as excellent.

5. At all times material: (1) Colonel Steven T. Chapman (Colonel Chapman), an African-American male, was the commanding officer of the PBA (2) Larry Wright (Mr. Wright), a white male, was the Executive Assistant of the PBA since 1996 and was the second person in command at the PBA (3) Eugene L. Schatz (Mr. Schatz), a white male, was the Chief of the PBA's Civilian Personnel Office (CPO) and (4) Larry Crane (Mr. Crane), an African-American male, was the Director of the PBA's Directorate of Contracting.

6. Mr. Wright had very limited opportunity to personally observe Ms. Kee performing her job duties as a GS-1102-11 contract specialist from 1996 to the present,  Mr. Wright also had limited opportunity to observe Elaine Nelson (Ms. Nelson) and Elton Harrison (Mr. Harrison) perform their job duties as GS-1102-11 contract administrators during this same period of time.

7. Ms. Kee was aware that two new GS-1102-12 team leader contract specialist positions would be available in the PBA's Directorate of Contracting.  The first GS-1102-12 team leader contract specialist position was announced on or about July 13, 2000, and its closing date was on August 22, 2000.  On August 10, 2000 Ms. Kee updated her 72 knowledge and 8 ability ACCES records.

8. On August 10, 2000, Ms. Kee notified Mr. Wright and Mr. Crane of her request

for an ACCES rating update.  Mr. Wright timely responded and rated her in the area of ACCES knowledge and in the area of ACCES ability on August 10, 2000.  Mr. Wright evaluated Ms. Kee in the area of ACCES ability, although he had little opportunity to personally observe her performing the ability criteria in the performance of her job duties.  The ACCES ability rating form Mr. Wright completed in evaluating her ability stated, "If a supervisor/reviewer has not personally observed the employee performing the abilities described, then a rating of CR(O)-C cannot rate is warranted."

9. Mr. Crane stated that he did not rate Ms.Kee under the ACCES knowledge or ability criteria until after August 22, 2000 because of his work load.

10. On October 10, 2000 Ms. Kee filed a complaint memorandum with the EEO Office of the PBA because she was not on the list for consideration to be promoted to the GS-1102-12 team leader contract specialist position.  The complaint was lodged against Mr. Crane and Mr. Schatz.   In the October 10, 2000 complaint, Ms. Kee stated:

> 4.  Background Statement
>
> In the entire history of Pine Bluff Arsenal, there has never been a Black Female Supervisor in the GS-1102 Series, Grade 12.  It does not and did not matter whether or not the Black Females had acquired a Bachelor's and/or a Bachelor and Masters Degree.  Preceding type employees have always been supervised or "led" by White Females with a High School Education or a GED, and occasionally by a Black Male.

Mr. Crane and Mr. Wright were informed of Ms. Kee's October 10, 2000 complaint.

11. From the time Mr. Crane became the Director of the Directorate of Contracting at the PBA on or about June 6, 1999 to October 10, 2000, Mr. Crane never complained to Ms. Kee about her attendance at work, and during that same period of time, Mr. Crane never told Ms. Kee

that she was not a dependable or reliable employee, nor did Mr. Wright complain about dependability or reliability during that same time frame.

12. On November 1, 2000 Ms. Kee met with Mr. Crane and Mr. Schatz. During that meeting Mr. Crane informed her there would be another GS-1102-12 contract specialist team leader position to be filled in the near future. During the November 1, 2000 meeting, Mr. Crane never complained to Ms. Kee about her attendance at work and he never stated that she was not a dependable or reliable employee.

13. In an e-mail Ms. Kee sent to EEOC Counselor Carl Williams (Mr. Williams) on November 1, 2000, with courtesy copies to Mr. Wright, Mr. Crane and Mr. Schatz, Ms. Kee stated:

> I feel that Pine Bluff Arsenal has a history of discriminatory actions as upheld by Management, which includes the Personnel Director for years and years. As I stated, Black Females have always been supervised and/or led by White Females with High School Education and/or a GED or, by males in the acquisition field. However, when these type employees receive mentoring, special projects, etc. that set them up to receive preferential treatment to the demise of the Black females that is not fair. When a Supervisor deliberately withholds rating a qualified employee and uses Pretext explanations for his reasoning…. The Supervisor made deliberated and premeditated decisions; therefore, the undersigned's position is that Accountability is a Factor at this point because she has suffered and is now suffering harm and emotional stress.
>
> Based upon the lack of good faith and discriminatory actions pursuant to the Civil Rights Act, etc. I, Thaddious L. Kee, Contract Specialist, GS1102, Grade 11, Step 8 hereby file a Formal EEOC complaint against the following:
>
> 1. Larry Crane (Deliberately and Premeditatedly withheld my ratings which caused me to not be eligible to even be considered for Lead Contract Specialist).
>
> 2. Gene Schatz (failure to act in Good Faith).

Mr. Wright and Mr. Crane read Ms. Kee's November 1, 2000 e-mail to Mr. Williams and neither Mr. Wright nor Mr. Crane contacted her to deny the allegations set forth in the e-mail.

14.     On November 1, 2000 Ms. Kee signed her formal complaint of discrimination which was filed with the PBA's EEO office on November 16, 2000.   Mr. Crane and Mr. Wright were notified on or about November 1, 2000 that she had filed her formal EEO complaint.

15.     Between October 10, 2000 and November 1, 2000, Mr. Crane never complained to Ms. Kee about her attendance at work and never told her that she was not a dependable or reliable employee.  During that same period of time, Mr. Wright never complained to Ms. Kee about her attendance at work and never told her that she was not a dependable or reliable employee.

16.     An evaluation panel was established by Mr. Crane to interview the applicants referred by ACCES to fill the first GS-1102-12 contract specialist team leader position and to recommend a person to fill that position.  On November 1, 2000 the evaluation panel interviewed the applicants for that position and among the applicants interviewed was Pamela Burton (Ms. Burton), a white female.   After the interviews were conducted, the evaluation panel recommended Ms. Burton to fill the position.  Based on the evaluation panel's recommendation, on November 9, 2000, Mr. Crane selected Ms. Burton to fill the vacancy to work as a GS-1102-12 contract specialist lead person at the PBA's Directorate of Contracting.  To Mr. Crane's knowledge, from 1994, when he first came to the PBA, to the present, Ms. Burton has never filed an EEO complaint against the PBA or against the Department of the Army.

17.     On November 22, 2000 Colonel Chapman issued a PBA policy letter pertaining to competitive and non-competitive promotions.  That policy remained in effect from November

22, 2000 to at least on or about August 1, 2001. The November 22, 2000 policy provided in pertinent part:

> 1.   Purpose:  The purpose of this policy letter is to provide guidance to selecting officials regarding policy and procedures to follow in making selections for promotion from competitive promotion "best qualified" lists, and in making non-competitive type promotions.
>
> 2.   Policy:
>
> ….
>
> b.   Supervisors will ensure job descriptions are current and accurate for all employees with job descriptions properly classified.
>
> ….
>
> 3.   Procedures for Competitive Promotions:
>
> ….
> c.   Identification, documentation, and subsequent careful and objective consideration during the selection process of such factors as job related training, education, and experience, coupled with bona fide consideration of all available candidates, is critical to the selection of the best candidate.  Use of selection of advisory panels is another method available to the selecting official.  Such panels, although slowing the selection process, will be used, as a minimum, when filling key management, GS-12 or higher positions, and wage leader and supervisor (WL/WS) positions.  When panels are used, the panel membership will contain functional expertise necessary to evaluate the candidates and the selecting official will not be a panel member.  The recommendation of the panel is advisory; however, if the selecting supervisor does not agree with the panel recommendation, he/she must get approval from the Commander or Executive Assistant prior to selecting someone else.  Records of panel procedures and the supporting rationale for the selection will be maintained for a two-year period.
>
> d.   In order to encourage the bona fide consideration of all persons on the "best qualified" list, all selections for competitive promotion actions must be documented in writing.  This documentation should result in one or more job-related reasons to support the selection being recommended.  The selecting supervisor must enter these reasons on

>the Referral and Selection Register.
>
>….
>
>18.   On December 11, 2000, Ms. Kee met with Mr. Wright in his office to discuss his ACCES ratings of her.  No one else was present during this meeting.  At the time of this meeting, Mr. Wright, knew a formal EEO complaint had been filed.  At this meeting, Ms. Kee was primarily interested in trying to persuade Mr. Wright to upgrade his ACCES ability ratings of her.  Although she discussed various ACCES ability criteria with him, such as ability to direct work activities, ability to plan and organize, human relations ability and the ability to analyze, she requested him to reconsider and update his human relations ability rating of her.  In response to her question why Mr. Wright had given Ms. Kee the ability scores he did, Mr. Wright answered that his evaluation methodology consisted of using dependability and reliability, and Mr. Wright stated to Ms. Kee that she had to be at work, if she wanted to obtain the ability ratings she was seeking.  Although Mr. Wright became the Executive Assistant at the PBA in 1996, December 11, 2000 was the first time that Mr. Wright ever mentioned to Ms. Kee her attendance at work.
>
>19.   On December 11, 2000, after conversations with Mr. Crane and Ms. Kee, Mr. Wright changed his knowledge ratings of Ms. Kee to be identical to the knowledge ratings of Mr. Crane, and he changed some of his ability ratings of Ms. Kee.  Mr. Wright upgraded Ms. Kee in the ability areas of ability to analyze, to communicate orally, to write, to innovate and to initiate action.  However, Mr. Wright never observed Ms. Kee performing her job duties and under the ACCES ability rating guidelines, he should not have made any ability ratings of Ms. Kee and should have written that he could not rate her, because he had not had adequate

opportunity to observe her at work.

20. Mr. Wright signed Ms. Kee's job performance evaluation (Senior System Civilian Evaluation Report) on December 15, 2000. Ms. Burton began working at the PBA as the GS-1102-12 contract specialist team leader on December 18, 2000. Before Ms. Burton reported to work on December 18, 2000, Ms. Kee had a conversation with Mr. Crane in his office about her job performance evaluation, and Mr. Crane told her that he had a hard time getting Mr. Wright to sign her job performance evaluation. Ms. Kee asked Mr. Crane if Mr. Wright was giving him a hard time because of dependability and reliability, and Mr. Crane stated that Mr. Wright had talked to him about dependability and reliability in that context. Mr. Crane told Ms. Kee that Mr. Wright wanted him to lower her performance rating and level, and that he told Mr. Wright that although Ms. Kee missed some work, she was still able to get her work done and that she still did good work. Mr. Crane did not lower her job performance rating or level and Mr. Wright signed Ms. Kee's November 1, 1999 to October 31, 2000 job performance evaluation in which he rated her as excellent.

21. On January 10, 2001, Mr. Crane initiated a SF-52 to establish and fill the second GS-1102-12 contract specialist team leader position.

22. The referral list for the second GS-1102-12 contract specialist team leader position was issued by ACCES on March 19, 2001 and Ms. Kee was on that referral list to be considered for promotion to that position. Mr. Crane established an evaluation board to interview the applicants for that position. The evaluation board consisted of Barbara W. Starks (Ms. Starks), who was the chairperson of the evaluation board, LaVara Henry (Mr. Henry) and Scott Kettering (Mr. Kettering). All three were supervisors and part of management. The

subject matter specialist on this evaluation panel was Mr. Kettering, who is a GS-1102-13 administrative contracting officer with contract specialist training and experience. Ultimately, the three applicants interviewed for this position were Ms. Nelson, Mr. Harrison and Ms. Kee. On May 8, 2001, the evaluation board interviewed those three applicants and ratings were individually assigned "to each candidate based upon their contracting experience and ability to function as a team leader." In a memorandum to Mr. Crane dated May 14, 2001 the evaluation board recommended Ms. Kee for selection to the position of GS-1102-12 contract specialist team leader. The composite scores for all three candidates were as follows: Ms. Nelson had a composite score of 204.0; Mr. Harrison had a composite score of 184.0; and Ms. Kee had a composite score of 235.5. Ms. Starks rated Ms. Nelson over Ms. Kee with a score for Ms. Nelson of 80 and Ms. Kee's score was 76. However, Mr. Kettering voted as either rater 2 or 3 in favor of Ms. Kee.

23. Between May 14, 2001 and May 31, 2001, Mr. Crane went to Mr. Wright to obtain Mr. Wright's permission to reject the evaluation board's recommendation to select Ms. Kee and to get Mr. Wright's approval to allow Mr. Crane to select Ms. Nelson to fill that vacancy. Mr. Wright gave Mr. Crane permission to reject Ms. Kee to fill the position and to select Ms. Nelson to fill the position. Mr. Crane also went to see Mr. Wright because Mr. Crane suspected there might be repercussions as a result of his not selecting the person recommended by the evaluation board and he wanted to make Mr. Wright aware of the situation.

24. On May 31, 2001, Mr. Crane rejected the evaluation panel's recommendation to select Ms. Kee and selected Ms. Nelson. Mr. Crane did not know why he waited from May 14, 2001 to May 31, 2001 to select Ms. Nelson. However, as required by Colonel Chapman's

November 22, 2000 policy, Mr. Crane listed his official reason for selecting Ms. Nelson:

> ELAINE MARIE NELSON—Candidate is selected to full (*sic.*) current GS-12 Contract Specialist vacancy.  Selection is based upon candidate's demonstrated knowledge and abilities to perform the required duties of the position.  Selectee meets all requirements for promotion to GS-12.

The reasons Mr. Crane authorized to be typed in the Referral and Selection Register were the same reasons and standards the evaluation board relied upon to recommend Mrs. Kee for that position.  Also, Mr. Crane knew the reasons listed in the Referral and Selection Register were going to be sent to ACCES and the personnel department as the official reasons of why he selected Ms. Nelson to fill the vacancy and he was also aware that Colonel Chapman's November 22, 2000 policy mandated that the official reasons for selecting the person to fill that vacancy had to be listed in the Referral and Selection Register.

25. To Mr. Crane's knowledge, his rejection of the evaluation panel's recommendation to select Ms. Kee for the GS-1102-12 contract specialist team leader position was the first time at the PBA that a selecting official rejected the recommendation of the evaluation board.

26. Ms. Nelson was the first African-American female to ever be selected for a GS-1102-12 contract specialist position at the PBA's Directorate of Contracting.  To Mr. Crane's knowledge, Ms. Nelson has never filed an EEO complaint against the PBA or the Department of the Army.

27. On June 13, 2001 Mr. Crane summoned Ms. Kee to his office, there was no one else present at that time.  Mr. Crane told Ms. Kee that he had selected Ms. Nelson for the GS-1102-12 contract specialist team leader position.  The reasons Mr. Crane gave Ms. Kee for not

selecting her were (1) she was too aggressive; (2) Ms. Nelson helped other people; (3) she had to work with other people; and (4) dependability and reliability as it related to attendance.  Mr. Crane knew that Ms. Kee was aggressive in the sense of standing firm in defending the best interest of the PBA and the Department of the Army in negotiating and enforcing contracts, and he also knew that she helped other people.  For example, when Mr. Crane first came to the PBA, Ms. Kee helped train him in the performance of his job, she also helped Ms. Nelson as a GS-1102-11 contract administrator and, after Ms. Nelson was promoted to the job of GS-1102-12 contract specialist team leader, Ms. Kee helped her in the performance of that job.  Also, Mr. Crane knew Ms. Kee worked effectively with others and she had good human relation skills in working with others, which was demonstrated in her job performance evaluation for the period of time from November 1, 1999 to October 31, 2000, where he and Mr. Wright evaluated Ms. Kee as exceeding the standard in the area of being able to maintain good working relationships with coworkers and other representatives.  Additionally, in his ACCES ability rating of Ms. Kee in the area of her ability to direct work activities, and the ability to assign and delegate work and to monitor the work of others, Mr. Crane rated Ms. Kee with a 5, which is the highest rate she could have received under the ACCES ability rating program.  During her meeting with Mr. Crane, Ms. Kee asked him who the evaluation board recommended to be promoted to the GS-1102-12 contract specialist team leader position and Mr. Crane told Ms. Kee he could not tell her.  She also asked Mr. Crane if the evaluation board had recommended her for that job and Mr. Crane again stated he could not tell her.

      28.    Mr. Crane wrote an undated memorandum for record.  He did not recall the date on which he wrote that memorandum for record, but testified he wrote it sometime after he made

the selection of Ms. Nelson to be promoted to the job of GS-1102-12 contract specialist team leader on May 31, 2001. In his undated memorandum for record, which he cleared with Doug Faith, the PBA's attorney, Mr. Crane stated:

> In conclusion, I did not consider her to be the best candidate for the job, Mrs. Kee's record of attendance for whatever reasons precluded her from being on the job was considered not to be in the best interest for the team leader position this office and the U.S.Army.

29. Before June 13, 2001, Mr. Crane never told Ms. Kee that she lacked reliability or dependability to perform her job as a GS-1102-11 contract specialist, and, before June 13, 2001, Mr. Crane never told Ms. Kee that she lacked reliability or dependability because of her attendance.

## Conclusions of Law

1. The court has jurisdiction pursuant to 42 U.S.C. § 2000e – 16(c) and (d).

2. Ms. Kee contends and must prove that on May 31, 2001, defendant (Mr. Crane) failed to promote her to the GS-1102-12 contract specialist team leader position in retaliation against her for initiating the EEO process on October 10, 2000 and for filing her formal complaint of discrimination on November 17, 2000. Initially Ms. Kee must first establish a *prima facie* case of retaliation by showing: (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. Defendant then must rebut Ms. Kee's *prima facie* case by presenting evidence of a legitimate, nonretaliatory reason for the adverse action taken against her. If defendant makes that showing, Ms. Kee must then show that defendant's proffered reason was a pretext for retaliating against her. *See, Higgins v. Gonzales*, 481 F. 3d 578 (8th Cir. 2007); *Scott v. County of Ramsey,* 180 F. 3d 913 (8th

Cir. 1999).

3.    Ms. Kee established a *prima facie* case. She initiated the EEO process on October 10, 2000 and she filed her formal complaint of discrimination on November 16, 2000. The uncontradicted evidence established that both Mr. Crane and Mr. Wright were aware of Ms. Kee initiating the EEO process on October 10, 2000 and filing a formal complaint of discrimination on November 16, 2000. On May 31, 2001, Mr. Crane took an adverse employment action against her by not promoting Ms. Kee to the GS-1102-12 contract specialist team leader position against the recommendation of the evaluation panel which had concluded that Ms. Kee was the best qualified person that it interviewed to be promoted to that position based upon her "contracting experience and ability to function as a team leader." Mr. Crane's adverse action against Ms. Kee, with the concurrence of Mr. Wright, was causally connected to the statutorily protected activity in which she engaged.

Mr. Crane's rejection of the recommendation of the evaluation board to select Ms. Kee as the most qualified person to be promoted to the GS-1102-12 contract specialist team leader position was causally connected to Ms. Kee's initiating the EEO process on October 10, 2000, and filing her formal complaint of discrimination on November 16, 2000. *Smith v. St. Louis University,* 109 F. 3d 1261(8th Cir. 1997) and *Smith v. Riceland Foods, Inc.* 151 F. 3d 813 (8th Cir. 1998).

4. Mr. Crane gave conflicting reasons why he did not promote Ms. Kee to the position of GS-1102-12 contract specialist team leader on May 31, 2002. In his official reason to ACCES and the personnel department in the Referral and Selection Register, he stated that he selected Ms. Nelson for the following reason:

> Candidate is selected to full (*sic*). current GS-12 Contract Specialist vacancy. Selection is based upon candidate's demonstrated knowledge and abilities to perform the required duties of the position. Selectee meets all requirements for promotion to GS-12.

Colonel Chapman's November 22, 2002 policy mandated that Mr. Crane list the official reason for selecting Ms. Nelson in the Referral and Selection Register, and Mr. Crane admitted to that mandate. But, in his undated memorandum for record, which he "recalls" he drafted "sometime" after May 31, 2001, Mr. Crane stated:

> In conclusion, I did not consider her to be the best candidate for the job. Mrs. Kee's record of attendance, for whatever reasons precluded her from being on the job, was considered not to be in the best interest for the team leader position this office and the U. S. Army.

The reasons listed by Mr. Crane in the Referral and Selection Register are virtually the same reasons and standards on which the evaluation board based its decision to recommend Ms. Kee to be promoted to the position of GS-1102-12 contract specialist team leader. There is nothing mentioned in that "official" reason about any attendance problem with Ms. Kee or anything about Ms. Kee being unreliable or undependable. There was nothing in the "official" reason listed in the Referral and Selection Register by Mr. Crane describing that Ms. Kee had an absentee problem and that she was not dependable or reliable and that was why he selected Ms. Nelson.

    Mr. Crane's "undated" memorandum for record reasons for not selecting Ms. Kee are pretextual and also reflect adversely on his credibility. Ms. Kee testified that when she met with Mr. Crane on June 13, 2001, one reason he gave to her for allegedly not promoting her to the GS-1102-12 contract specialist team leader position was her "dependability and reliability as it related to attendance." It is uncontradicted that before June 13, 2001, Mr. Crane never told Ms.

Kee that she lacked reliability or dependability to perform her job as the GS-1102-11 contract specialist, and before June 13, 2001, Mr. Crane never told Ms. Kee that she lacked reliability or dependability because of her attendance.  Also, although Mr. Wright never personally observed Ms. Kee perform her job or job duties, before December 11, 2000 Mr. Wright never told Ms. Kee that she lacked reliability or dependability to perform her job as a GS-1102-11 contract specialist, and before that same date, Mr. Wright never told Ms. Kee that she lacked reliability or dependability because of her attendance.

The reasons advanced by Mr. Crane for not promoting Ms. Kee to the GS-1102-12 contract specialist team leader position on May 31, 2001, are pretextual and she has proven that the real reason(s) Mr. Crane did not promote her was in retaliation for initiating the EEO process on October 10, 2000, and for filing her formal complaint on November 16, 2000.

5. Defendant and its officers, agents and supervisors shall not retaliate or discriminate against Ms. Kee for initiating the EEO process or for filing a complaint of discrimination against it and shall give Ms. Kee all possible consideration for promotion to the next vacant GS-1102-12 contract specialist team leader position.  Ms. Kee may file a motion for attorney's fees and cost reimbursement.

## Conclusion

A separate Judgment will be entered in favor of Plaintiff in accordance with these findings and conclusions.

IT IS SO ORDERED this 16th day of July, 2007.

_____
James M. Moody
United States District Judge

15